**MULITAUAOPELE IVI, Plaintiff**

**v.**

**BOARD OF TRUSTEES OF ASG EMPLOYEES RETIREMENT FUND and GEORGE ODOM, Defendants**

High Court of American Samoa
Trial Division

CA No. 65-95

July 1, 1996

is even mentioned in Tuuga's deposition.

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and VAIVAO, Associate Judge.

Counsel:     For Plaintiff, Tautai Aviata F. Fa`alevao
             For Defendants, Cheryl A. Crenwelge, Assistant Attorney
             General

Decision and Order:

## INTRODUCTION

Plaintiff is an American Samoa Government retiree drawing a certain annuity under the Government Employees Retirement Fund (hereinafter the "fund"), set up by A.S.C.A. §§ 7.1401 *et seq.* (hereinafter the "Act"). The defendant Board of Trustees (hereinafter the "board") was established by the Act to administer the retirement fund. *See* A.S.C.A. § 7.1410. Defendant George Odom is the executive officer appointed by, and responsible to, the board to manage the fund and the retirement office.

Plaintiff seeks an increase in his annuity claiming entitlement to additional service credit under A.S.C.A. § 7.1430(f), for time which he spent off-island in furtherance of his education.[1]  Plaintiff additionally seeks the reinstatement of his benefits to reflect the inclusion of his six months of employment with the Governor's Office between August 1989 and March 1990.  The board denied both requests.

---

[1] The Act provides for an "operative date" of January 1, 1971, the date on which the fund began its operations. *See* A.S.C.A. § 7.1403(m). The Act also grants credit for service *prior* to the fund's operative date, under certain enumerated circumstances, including separation from government employment for purposes of further education. *See* A.S.C.A. § 7.1430.

The salient facts in this matter are as follows: Plaintiff was first employed by the government when he worked for the Fono shortly after completing high school. On January 13, 1959, plaintiff left this employment to attend school on the mainland. After obtaining his law degree in 1967, plaintiff returned to the territory at the expense of the Department of Education in response to the latter's representation that there was a job available for him at the local Attorney General's Office. Upon arrival, however, plaintiff was told that there was no position available for him at the Attorney General's Office, and he thereupon set himself up in private practice. On January 3, 1981, plaintiff re-entered government employment when he was elected to the Senate from Sua County, Eastern District. He served two terms in the Senate and again left the territory. Plaintiff returned in August 1989, to work for then-Governor Peter T. Coleman to liaise with the Fono. A written service contract consisting of eleven pages was drawn up and executed between plaintiff and the government.[2] This agreement, styled "Independent Contractor Service Contract," stipulated a performance term of one month, commencing August 29, 1989, and ending September 28, 1989. The agreement further recited a "professional fee" of $2,000 for the performance to be rendered. The term of the agreement was extended on two succeeding occasions: first on October 2, 1989, for a further month, and then on October 10, 1989, for a term ending March 31, 1990. Although plaintiff was principally hired to liaise with the Fono, his duties subsequently involved writing speeches for the Governor, acting as the Governor's orator at traditional functions, and representing the Governor at meetings of the South Pacific Commission. During this time, plaintiff was paid the stipulated contract fee "upon invoice," after it was certified by the Governor's Office. Payment was made without any tax withholding or deductions whatsoever and the government filed, pursuant to applicable revenue laws, Revenue Form 1099 reporting total monies it had paid to plaintiff.

The Board of Trustees denied plaintiff's claim for prior service credit under § 7.1430(f) on the basis that plaintiff did not return to government

---

[2] We note that the then-Attorney General who approved the service contract as to form is none other than plaintiff's counsel, now in private practice.

employment within two years of his completion of studies, as the enactment required. The board's denial of plaintiff's service credit claim for the six months he worked for the Governor's Office was based on the board's assessment of his employment status as that of an "independent contractor," ineligible under A.S.C.A. § 7.1421(3).[3]

## DISCUSSION

I.      Prior Service Credit

A.S.C.A. § 7.1430(f) reads:

> Any person employed by the government who takes leave of absence without pay or terminates from such employment in order to further his education, may upon returning to employment with the government, claim retirement credit for such time spent in furthering his education, by paying to the retirement fund contributions which he would have paid had such time spent on education not been excluded by virtue of his leave of absence without pay or termination, together with regular interest thereon, from the date such contributions would have been made, had such time so spent not been excluded, to the date of actual payment; *provided*, however, that this section shall apply only to those persons who resume employment in the government within 2 years after completing studies.

*Id.* (emphasis added). Plaintiff urges a reading of § 7.1430(f) such as would render the proviso inapplicable in his circumstances, reasoning that he was ready, willing, and able to comply with the proviso, but that he could not do so simply because the government did not have the promised job for him. He submits that such a construction of the enactment ought to be available in view of the twin legislative policy goals behind the Act, that is, to provide for employees in their old age, and to encourage higher education.

---

[3] Apparently, plaintiff was previously allowed service credit for this period of employment but with the filing of his suit, the board revisited plaintiff's case and subsequently determined, with the advice of the Attorney General, that this period of employment was ineligible for service credit. The board adjusted down plaintiff's annuity accordingly.

83

■ While these laudatory policy goals of the Act are not lost on us, the construction advocated by plaintiff is entirely baseless. Plaintiff would have us ignore the proviso altogether and read into § 7.1430(f) an exception to the unambiguous language used by the Fono. The language employed in the proviso is very straightforward, eligibility is limited to those "who *resume* employment" within two years. *Id.* (emphasis added). The Act does not talk about extending eligibility to those who *could have resumed* employment within the two-year period, but for the availability of a promised government job.[4] We see neither the need nor the legislative authority to effectively render the proviso nugatory with the overly imaginative reading suggested by plaintiff. If the Fono had wanted to provide for the scenario suggested by plaintiff, it could have. It has not.

II.     Additional Service Credit

Similarly, we find plaintiff's second claim for service credit to be without merit. Plaintiff argues that notwithstanding his service contract, which speaks unequivocally of his employment relationship with the government as that of an "independent contractor," he should be treated otherwise for purposes of the Act. He claims that while he worked for Governor Coleman, he was not independent in that he was subject to the direction and control of Governor Coleman who gave him his work assignments. He argues that he is not, therefore, an independent contractor, as that term is used in § 7.1421, but rather an "employee" as that term is defined under § 7.1403(f) (defining "employee" as "any person in the employ of the government, in all occupational classifications").

■ The evidence is overwhelmingly in favor of the board's assessment of an independent-contractor relationship. Again, plaintiff urges the court to *close our eyes to the reality of the document;* and to disregard the legal relationship painstakingly documented thereunder, as well as the manner in which performance due from the government was deliberately set out and later implemented. The explicit contract language designated plaintiff an "independent contractor" and is *prima facie* evidence of his status as such. He must present evidence to overcome this and show that a different

---

[4] We were supplied no details behind the Department of Education's involvement with manpower matters of the Attorney General's Office. It is to be noted, however, that the matter of government employment is extensively regulated and is administered by the Department of Human Resources. *See* A.S.C.A. §§ 7.0101 et seq.; A.S.A.C. §§ 4.0101 et seq.

employment relationship existed.

■   The primary question in determining whether plaintiff was an independent contractor is the question of who had control over his work. *See Hearst Publications v. National Labor Relations* Bd., 136 F.2d 608, 612 (9th Cir. 1943); *Watson v. Commissioner of Internal Revenue*, 81 F.2d 626, 627 (3d Cir 1936). That plaintiff may have been given his assignments by Governor Coleman does not necessarily equate with direction and control of his performance under the contract. For instance, it is unlikely, and there is no evidence to suggest the contrary, that Governor Coleman had directed plaintiff as to how he should perform as a lobbyist before the Fono or how he should perform the role of talking chief. Clearly, Governor Coleman had hired plaintiff for his specialized competence, and, indeed, plaintiff had testified that he was sought out by Governor Coleman to liaise with the Fono in light of the fact that he had previously been a member of the Senate.

■   Another question to be considered in determining whether someone is an independent contractor is the method of payment by his employer. The fact that a person is paid a lump-sum amount for work undertaken, as compared to being compensated on an hourly basis, tends to show an independent contractor relationship. *See* 41 AM. JUR. 2D *Independent Contractors* § 13, at 759-60 (1968). Plaintiff received contract fees "upon invoice," not hourly wages, thus tending to show that he was an independent contractor. The fact that an employer does not deduct taxes from earnings tends to evidence an independent contractor relationship. *See id.* at § 22, at 773. The government did not withhold taxes from plaintiff's paychecks, also tending to show that he was an independent contractor.[5]

Furthermore, Section 7.1403(f), which broadly defines the term "employee," does not advance plaintiff's cause in any way. On the contrary, Section 7.1421, which enumerates ineligible persons, speaks also of "*employees* [that] are not eligible for membership in the fund*," including, among others, independent contractors. This same section excludes from fund eligibility those employees "whose services are compensated on a fee service," A.S.C.A. § 7.1421(2), as well as those employees "whose employment is

---

[5] Other factors normally considered in distinguishing between an employee and independent contractor relationship include control of premises, control of workers and by whom they are paid, and furnishing of tools and appliances. *See* 41 Am. Jur. 2d *Independent Contractors* §§ 5-23, at 743-74 (1968). None of these factors appears applicable here.

purely temporary, seasonal, intermittent, part time, or only for a specific project." A.S.C.A. § 7.1421(4). Clearly, plaintiff is ineligible under either of these subsections as well. Accordingly, we conclude that it was well within the board's province to rule as it did against plaintiff.

For reasons given, judgment will enter in favor of the defendants.

It is so ordered.